Good morning, may it please the court. I represent the appellant and the plaintiff in this case, Mr. Figgs, and I think that I'd like to start by pointing out a couple undisputed facts in this case which I really think illustrate what an injustice has been done. The first undisputed fact is that plaintiff's lawful release date was January 16th, 2011. The second is that he wasn't released from prison until June 28th, 2012, more than a year and a half after he was supposed to be released from prison. This was undisputedly due to a sentence miscalculation and a miscalculation that Mr. Figgs identified and grieved. There's no dispute about that and therefore there's no dispute, and the district court acknowledged this, that the defendants were aware of the risk, the serious risk that he was being held beyond his lawful out date. That's the first prong of the argument there. Most shocking of all, there's no dispute that the defendants did not even attempt to recalculate. You have to prove deliberate indifference, right? Yes, and the first count we do have to prove deliberate indifference is an Eighth Amendment violation. And what is the deliberate indifference here, by these clerks or whatever who screwed up the battle? Well, as the court is well aware, the deliberate indifference standard begins with knowledge of a preventable risk and the district court agreed that there was knowledge of preventable risk in this case. Both defendants were aware of the risk that Mr. Figgs was being held beyond his out date. And then second, the refusal to do anything, however trivial. It is undisputed that the defendants did not even attempt to recalculate Mr. Figgs' sentence until June 27, 2012, the day before he was released. He grieved this and filed a habeas, later converted to a mandamus petition. They fought that petition in court while withholding his grievance, expressly withholding his grievance. They filed a summary judgment motion against his habeas petition. He pressed his case pro se, survived summary judgment. The day after he survived summary judgment, they recalculated his sentence for the first time, released him the following day. That is something, however trivial. That is the standard for deliberate indifference. It took a matter of minutes to recalculate his sentence and let him out, and the state defendants waited until after they knew they were facing a trial in his habeas petition to even take that trivial effort. That is the definition of deliberate indifference. Not only did they ignore his complaints, and these are not just your typical grievance, something's wrong here. Mr. Figgs is providing them with everything they need to know what the problem is. He's explaining to them why his sentence is miscalculated in a very sophisticated way, a way that ended up getting him past summary judgment in the circuit court of Logan County. But not only did they ignore that, but they did so actively. They took several deliberate steps to deny him process. They withheld his grievance explicitly, and ultimately to deny him his freedom. Ms. Fischel, the defendant in this case... Well, can you be more precise? Sure. Picking on either one of these defendants, Dawson or Fischel, what exactly, what is the timetable with regard to... Mr. Figgs began complaining about his miscalculation early in 2011 and throughout 2011. I believe his grievance and his habeas petition were both filed in October of 2011. And he said that he hadn't been on this mandatory supervised release. Correct. He said that he had never actually been released and therefore could not have violated his mandatory supervised release, which is true. Yes, yes. Now, and what was the... So he told Dawson and Fischel these things? Yes, he did, explicitly. And Ms. Fischel, rather than looking into that... What did Dawson do? Mr. Dawson took the emergency grievance and marked it non-emergency, ensuring that it would not be dealt with quickly. And he testified that maybe he would have considered it an emergency if the outdate was the next day. But since the outdate wasn't until 2013, he thought it wasn't an emergency. Of course, Mr. Figgs was telling him the outdate was nine months ago. So he's essentially saying that because I didn't believe him, it wasn't an emergency. Then... Now, you're saying Dawson did not... He didn't believe that... What? He believed that he was... That he was... He didn't even look into it to that degree, I don't think, Your Honor. He believed that the sentence calculation worksheet, which had been filled out by somebody at a different facility, said his outdate was 2013. Therefore, his outdate was 2013. That's two years from now. It's not an emergency. He marked it a non-emergency. Then... Okay, so he's relying on some other... On the calculation that Mr. Figgs is contesting, yes. And the deliberate indifference is what? He knew it was wrong, or knew it was probably wrong, or what? No, the deliberate indifference is that he knew there was a possibility it was wrong. The thing he relies on is the thing that Mr. Figgs is saying is wrong. He just looks at it and confirms it says what Mr. Figgs says that it does, and says that's enough. Secondly, not only does he say it's not an emergency, but when it comes back up on a regular grievance review, the response is to withhold the grievance until the habeas petition is resolved. Until the motion to dismiss at that point and later summary judgment is resolved. He is being sued in a habeas case, and rather than looking into whether or not Mr. Figgs is right and this is wrong, he says, well, let's wait and see whether or not we can survive the habeas petition. And the day after he loses summary judgment, and not the summary judgment motion by Mr. Figgs, but when he fails to succeed on his summary judgment motion, the very next day Mr. Figgs' sentence is finally recalculated, admittedly for the very first time since he started complaining about it, and he's released the following day. This is a man who spent over 500 days in prison without lawful justification, because no one was willing to listen. This is clearly an instance where prison officials are not willing to believe grievances from prisoners, and that's not their option. They have to give credence to these complaints because they are depriving him of liberty. What was the grounds of the habeas? The grounds of the habeas was that his sentence had been miscalculated and ended up having to be Yes. Official was the Was it reasonable for him to believe that the issue that was being raised in this grievance was being concurrently litigated in the court? It was being concurrently litigated in the court. It is not sufficient for So if you're a bureaucratic official in the Bureau of Prisons and you get this, it turns out, legitimate inquiry and you see it's in the hands of the judiciary in a separate proceeding, to await that would be considered a deliberate indifference. You should have a parallel fact finding when the fact finding is being argued or arguably presented to a judicial officer? No, I don't think Mr. Fick should have had to go to the judicial officer because there's a grievance procedure in the prison He should have been about making the same inquiry that's being raised in the habeas It's a she actually. Ms. Fischel should have done her job, which is as records office supervisor, to recalculate sentences That's admittedly her job. She didn't. That's why he had to file the habeas petition Once the habeas petition is on file, for Ms. Fischel to rely on that and say well, it's being resolved by the courts, is her simply refusing to do her job Dawson is the warden. How many prisoners are there in the prison? I believe there were over a thousand I don't recall exactly at this point. Well, if there are always over a thousand how can the warden be expected to get involved in the grievances of particular prisoners? Doesn't he rely on staff for that? Sure, he can rely on his staff, but it is his personal responsibility to decide whether or not these grievances are emergencies and he decided not to make an emergency. Yes, but doesn't he have to rely how is he supposed to determine whether something's an emergency? Supposed to be running around and looking for emergencies with his thousand inmates? I would submit that when somebody is potentially being held in prison more than ten months after their outbate, that is an emergency and Mr. Dawson should know that. And this is not something that happens infrequently There's testimony in this case that this happens relatively frequently in the Illinois Department of Corrections and they knew that. But moreover, Mr. Dawson at least has the responsibility of making sure that his staff does look into it and he didn't. What he did was made sure that the staff went and looked at the calculation that Mr. Figgs was complaining about and confirmed that it in fact said what Mr. Figgs said was wrong. So if Mr. Figgs says the calculation is wrong and Mr. Dawson's response is, did anyone check the calculation? Oh, it says what he says it is? Well, that's good enough. That's not doing your job. Someone needs to go and see whether the calculation was done correctly. Whether or not Mr. Figgs is telling the truth. Not just confirm that Mr. Figgs is right, it does say his outdate is in 2013. That's the whole problem. Why don't you call that negligence rather than deliberate indifference? For two reasons. The first is, negligence requires only new or should have known of the risk. And I'm just going to finish answering your question here. I'd like to reserve time for rebuttal, but deliberate indifference or recklessness requires knowledge of the preventable risk. That's the first prong. And there's no dispute that there was knowledge of the preventable risk. The district court acknowledged there was knowledge of the preventable risk. This isn't a should have known situation. They knew. They were on active notice, actual notice. Not knowledge of potential risk. Knowledge of risk. There's always potential risk. Knowledge of preventable risk is the standard for deliberate indifference. There was an acknowledgment by the district court that that was present here. So then it goes to the second prong, which is whether or not they were willing to do anything. What did Fischel do that was wrong? Ms. Fischel did the same thing. She looked at the previous calculation sheet, saw that it said 2013, and then said, well, he's telling me that's wrong. Rather than doing my job and looking to see if he's right about that, as I am the only person in the information necessary to see whether that's true, I'll send these three pieces of paper to Springfield and ask them if this calculation is done correctly. She did that, and she says that's enough. The reason we know that's not enough is, first of all, because she didn't give them what they needed to see whether he was telling the truth. Secondly, because the grievance was explicitly withheld. If they thought they were doing everything they needed to do, what does withholding a grievance mean? It means that they were holding off on doing the one thing they needed to do, which they did the day that the summary judgment decision came down, and it took them no time at all, and he was released the next day. That's what they should have done from the beginning. You say she failed to provide full information. What did she withhold when she sent it to Springfield? Well, the reason Mr. Figgs was complaining that he had not violated his mandatory supervised release, Your Honor, is that he was actually in prison at the time when he supposedly committed this other crime. She had his master file, which had all the information to show that that was in fact true, and in fact, she referenced that information in her affidavit in support of the summary judgment motion, so she knew of this information. But that was only in his master file, which is only at the facility. Springfield doesn't have that information. All she sent them was the minimus and the PRB order, and that was it. But there's nothing wrong with her wanting to double check, because she doesn't know whether these are accurate. She didn't check a first time, Your Honor. Pardon? It's not a double check. She never checked the first time. She said, I never recalculated his sentence until the day before he was released. So why do you think she sent the stuff to Springfield? Because she wanted to wash her hands of it, Your Honor. This is a case where everybody says, I didn't need to do anything more than what I did. I checked the piece of paper. It said what it said. I'm done. And that's what the district court is upholding. That's a terrible view of the deliberate indifference standard. It leaves state officials in a situation where as long as they pass it on to somebody else's desk, then that's all we have to worry about. And that's not good enough when we're talking about depriving people of their freedom for over a year with no reason. We're all paying for this man to spend a year and a half in prison beyond his out date, because nobody's willing to make a phone call or look at a piece of paper. Got a huge cut in his sentence. Yes, he got the good credit. 20 years for a murder doesn't sound like much. I just don't think that issue is relevant to this case though, Your Honor. It's true. It's not. Okay. Well, thank you very much. Thank you. Mr. Morales-Doyle. Ms. Hanson. Good morning. May it please the court. I'm Christina Hanson representing the defendants, Lori Fischel and Alex Dawson. The standard is that the defendants were required to know of a serious preventable risk to the plaintiff and refused to do anything about it. That simply was not the case here. When Mr. Dawson submitted inquiries concerns about his sentence, Lori Fischel looked into the sentence. She looked at the sentencing order as well as the prison review board order and determined that the calculation was correct. What plaintiff is suggesting is that she should have initiated a new calculation, but there was no basis for her to do so. Based on the corrected minimus, the sentencing order and the prison review board order that had declared Mr. Figg's a violator of his mandatory supervised release, the sentence appeared correct to her. And then she sent it up to the chief records office and Ona Welch, who was the... Sent it to whose office? She sent it to the chief records office in Springfield. Ona Welch was the assistant chief records officer and she reviewed the calculation as well. Based on the same documents, she determined that the sentence calculation appeared correct. If Ms. Welch had wanted to look at additional documents, she testified herself that she would have requested them, but based on those binding orders, the sentence calculation appeared correct. What plaintiff is essentially asking suggesting is that Fischel should have disregarded the prison review board order or somehow determined that it was incorrect and then calculated the sentence based only on the corrected minimus. That is not something that she had... As a matter of fact, that's not something that she was aware of. His complaints, at least with respect to his grievance and even his habeas petition and his own inquiry to the chief records office, were that he never had a parole revocation hearing and he never violated mandatory supervised release. But there was a prison review board order in his file that indicated that he had had a hearing. And not only did Fischel respond to his inquiries with that information, but the chief records office also sent him a letter in December of 2011 indicating that he had been declared a violator of his MSR and that his sentence calculation was correct based on those two orders. Based on the corrected minimus as well as the prison review board order. Well his grievance was October 31, 2011? That's right. And did that grievance go to Fischel or Dawson? He marked it as an emergency, so it went to Dawson, who testified that he looked at it he contacted Fischel to determine if the sentence, if the release date was correct. Having already gone through that analysis and already sent the documents and already inquired, asked the chief records office to look at it too, she indicated to Mr. Dawson that it was correct and therefore the grievance was denied as an emergency. Had Fischel seen his October 31st grievance? Or just Dawson? She was aware of it. She was aware, she was contacted in relation to it, both by Dawson and after it was rejected on an emergency basis, it was processed and a grievance officer reviewed the grievance. And the grievance officer indicated on the grievance that he had consulted with the chief records office as well as the legal department and the sentence calculation was correct based on the corrected minimus and the prison review board order. But since litigation was already pending in the circuit court on Mr. Fischel's habeas petition the decision was made to stay the grievance. But it had been investigated. It's not that there was no investigation into whether the sentence calculation was correct, it just wasn't it just was held, it was just stayed pending. Springfield didn't have the record showing that he hadn't been on mandatory supervised release? They didn't have the entire master file. They didn't have the entire master file. They had the documents that Ms. Fischel had sent to them and could have requested any additional documents. But the prison review board order indicated that he had violated his mandatory supervised release. Well how did the government learn that he hadn't been on mandatory release? I mean we now know apparently that... Right. The prison review board order declared him a violator of mandatory supervised release on December, in December of 1992 December 2nd I believe of 1992. And on that date he had been transferred so the record showed that he had been transferred from the Department of Corrections into the County Department of Corrections. Right, to another jail. But the defendants here Fischel and Dawson were bound by the orders. They were bound by the sentencing order as well as the prison review board order. The 1992 order? The 1993 order, yes. And Fischel didn't just recalculate his sentence after the motion for summary judgment on the habeas petition had been denied. The prison review board on June 27th, 2012 issued an order vacating its previous order and it was pursuant to that order that Fischel recalculated the sentence and then Mr. Figgis was released. And so under those facts Fischel simply did not act with deliberate indifference. She took the steps to determine that the sentence calculation was correct based on the orders that were, based on the then applicable orders. And as noted for the same reason, defendant Dawson also was not deliberately indifferent. He checked with the people responsible for sentencing calculations to determine that the calculation was correct and that is why the grievance was denied as an emergency. And in this case, as I mentioned, the litigation, the circuit court litigation was already pending at the time. The court was already sorting through these issues. And the grievance was in fact investigated. So under these facts, Dawson also was not deliberately indifferent to the risks of plaintiff's continued incarceration. Finally, the district court correctly concluded that Dawson did not violate, did not deny Mr. Figgis liberty without due process. That claim also relates to the holding of the grievance. But Mr. Figgis had procedural avenues there were state processes in place in order for his in order for him to challenge the sentence. And he was actually taking advantage of those processes. For those reasons we ask that the court affirm. Okay, thank you Ms. Hanson. Mr. Morales-Doyle, do you have anything further? My opposing council has said that the grievance was already investigated at this point. It begs the question of what does it mean to withhold the grievance? If everything had been done, what does it mean that the grievance is being withheld? What it means is everything hadn't been done. We know that because everything wasn't done until June 27th and it got done very quickly. And yes, it's true the PRB vacated his order on that day. It wouldn't be a standard bureaucratic response that you have a complaint from a prisoner and you check the file and you see that in 1993 or whenever he was ordered to be re-imprisoned after his mandatory supervised release, something like that. You stop there. You think you have the answer. There's the order. Two reasons why I would say no, Your Honor. The first is that the order doesn't say that. The order doesn't say that his mandatory supervised release was revoked. The box is not checked. It says he violated it. That's all it says. Yeah, but that implies that he was on mandatory supervised release. Sure it does, but it doesn't imply that it was revoked and that there was any time added on to his sentence. It also doesn't mean that when the mitimus says that he's to get credit for time served back to January 16th 1991 that he doesn't get credit for time served back to January 1991. Ms. Fishel didn't actually read these orders with any kind of keen eye. She knew what they meant and she knew what they didn't say. It didn't require vacation of the PRB order to see that Mr. Figgs was being held without justification. And by the way, the PRB order was vacated after a call from Ms. Fishel. So when prosecutors go around reviewing its 20 year old orders and deciding that they got it wrong, they did that because someone from records called them and said it's wrong. And that was Ms. Fishel's job and that's admitted in the record that it was her job to do that. If she could tell something was wrong, she was supposed to call them. And she could have had she done her job the first time, but she didn't until a year and a half later. Mr. Morales, is making the sentence on murder consecutive to the drug case, is that a mistake? Or is the consecutive sentence still mandated for other reasons? I'd say the amended minimus is relatively confusing and Ms. Fishel acknowledged that. Still confusing? Yes. So it's a complicated sentence. It isn't a straightforward sentence. And Ms. Fishel acknowledged that when something is complicated, what she can do is call and ask for a clarification, a phone call. That's what happened on June 27th and that's what everyone refused to do until June 27th. That phone call cleared the whole thing up very quickly and he was released immediately. That's all we were asking to be done in the first place. Okay, well thank you very much both counsel.